(No. 17083.—Decree affirmed.)
GEORGE H. STRATTON et al. Appellants, vs. THE HENKEL
CONSTRUCTION COMPANY et al. Appellees.

*Opinion filed April 23, 1926.*

1. HIGHWAYS—*notice of hearing to re-locate State hard road is not essential.* The Department of Public Works and Buildings need not notify the people of communities affected by the re-location of a State bond issue road of the hearing on the question of the re-location where the route was originally located after a hearing of all the merits of the original route, as the hearing is only for the benefit of the department in making its decision.

2. SAME—*when route of hard road may be changed by State department.* As the Department of Public Works and Buildings has power and jurisdiction, under the statute, to make reasonable alterations in the location of hard roads, the originally selected route of a hard road under the Bond Issue act of 1917 may be changed where it appears that the route as finally located will accommodate more people and sufficiently connect "intervening communities" within the meaning of the act, although in the original route the State could have used a part of a county hard-surfaced road, the major part of which, however, was not of satisfactory construction.

3. SAME—*when complainants enjoining construction of a hard road are guilty of laches.* Complainants seeking to enjoin the construction of a State hard road as re-located by the Department of Public Works and Buildings are guilty of *laches* in filing their bill more than a year after the change in the location was made and when the contract for most of the road had been let and a large part of the work had been done and paid for by the State.

APPEAL from the Circuit Court of DeKalb county; the Hon. JOHN K. NEWHALL, Judge, presiding.

MIGHELL, GUNSUL & ALLEN, and THOMAS M. CLIFFE, for appellants.

OSCAR E. CARLSTROM, Attorney General, CASSIUS POUST, State's Attorney, G. E. NELSON, ROY D. JOHNSON, HARRIS D. FISK, and L. FRANK MOUDRY, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellants, George H. Stratton and eleven other residents and tax-payers of DeKalb county, filed their amended bill in the circuit court of DeKalb county against Henkel Construction Company, Cornelius R. Miller, as Director of Public Works and Buildings, Frank T. Sheets, as superintendent of highways, Albert C. Bollinger, as director of finance, Oscar Nelson, as Auditor of Public Accounts, and Omer N. Custer, as State Treasurer, appellees, to enjoin them from presenting any bill of particulars or issuing or paying any warrants for the construction of State Bond Issue Route No. 23 as located by the Department of Public Works and Buildings on July 3, 1923, between the city of DeKalb and the south line of DeKalb county. A demurrer to the bill was overruled, and upon a hearing before the court on the bill and answer the bill was dismissed for want of equity. Complainants, as appellants, have prosecuted this appeal.

The amended bill as filed by appellants sets out the enactment of the act of 1917 known as the $60,000,000 Bond Issue act, providing for the construction of a State-wide system of hard-surfaced roads, to be paid for with the proceeds of bonds to be issued by the State. The bill alleges that the Department of Public Works and Buildings and the superintendent of highways on August 23, 1922, located Route No. 23 as provided by the above act, to run in a southerly direction over a highway known as the Burlington road from the city of DeKalb, thence south through the village of Waterman, thence south and west to the village of Leland, to connect with Route 18, but that on July 3, 1923, the said Department of Public Works and Buildings and the superintendent of highways arbitrarily, illegally and wrongfully changed the route so that it ran one mile east of the village of Waterman and two and a half miles east of the village of Leland over a neglected and little used

road, to the irreparable injury of appellants and other residents and tax-payers of those communities. The answer of the appellees admitted the change in the location of Route No. 23 in DeKalb county as charged in the bill, but denied that there was any fraud, conspiracy or improper conduct in changing the route, and alleged that they were acting in the best interests of the people of the State of Illinois in re-locating that part of Route No. 23. By their answer they alleged that appellants were guilty of *laches* in delaying the filing of their bill for more than a year after the change in the location was made and until after the contract for most of the road had been let and a large part of the work had been done and paid for by the State.

By the $60,000,000 Bond Issue act of 1917 Route No. 23 is described as follows: "Beginning in a public highway at the Wisconsin State line, north of Harvard and running along such highway in a general southerly and southwesterly direction to Streator, affording Harvard, Marengo, Sycamore, DeKalb, Ottawa, Streator and the intervening communities reasonable connections with each other."

In 1922 the Department of Public Works and Buildings and the superintendent of highways of the State of Illinois gave notice to the inhabitants of Waterman and Leland that they would hold a public hearing in Chicago for the purpose of locating Route No. 23 from DeKalb to the south line of DeKalb county. Pursuant to these notices a public hearing was held in Chicago and suggestions and arguments were heard by the department and superintendent from various citizens of the communities of Waterman and Leland for the location of the route through that part of DeKalb county over what was known as the Burlington road. Thereafter, on August 23, 1922, Route No. 23 was located on the Burlington road from DeKalb south through Waterman and thence south and west through Leland and there connecting with Route No. 18 of the State hard road system. Thereafter, upon petition of the people of the

villages of Somonauk and Sandwich, another hearing was held in Chicago for the purpose of hearing suggestions and arguments by the citizens of those communities for the re-location of Route No. 23 east of Waterman and Leland as originally located. The people of Waterman and Leland, and others along the route as originally located, were not notified of this latter hearing. On July 3, 1923, the Department of Public Works and Buildings changed the location of Route No. 23 from a point six miles south of DeKalb to the south line of DeKalb county so that the route ran due south from DeKalb to the south line of DeKalb county, being then one mile east of the village of Waterman and two and one-half miles east of the village of Leland. As re-located the route traversed a public road throughout its course in DeKalb county and intersected with Route No. 18 south of the county line.

In support of their bill appellants introduced evidence tending to show that the road as originally located ran over what is known as the Burlington road, a public highway which was, and had been for more than forty years, the main traveled highway between DeKalb, Waterman, Leland and Ottawa and almost exclusively used by the inhabitants of those communities in traveling to and from DeKalb and Ottawa, and that the route as re-located runs over a little used and neglected road not connecting Waterman and Leland with DeKalb and Ottawa; that between DeKalb and Leland, on the route as originally located, there is more than eight miles of DeKalb county State aid roads improved with a pavement ten feet wide, five miles of which were abandoned by the re-location of Route No. 23, and which it is claimed by the witnesses for appellants could be made use of by the State in the construction of Route No. 23, thereby saving to the State the cost of that much pavement. They also showed that the necessary right of way for the construction of the road as originally located had been obtained without cost to either the State or the county of

320–34

DeKalb, and that the re-location made it necessary to expend more than $10,000 in obtaining necessary right of way.

The appellees introduced evidence in support of their change and re-location of the route. Waterman is shown to have a population of 400 people and Leland a population of 600 people. The villages of Somonauk and Sandwich have a combined population of more than 3000. It was also shown that the re-located route would accommodate more people of the intervening communities between DeKalb and Ottawa. The distance to be traveled by the people of the communities of Sandwich and Somonauk in traveling to and from the county seat of their county would be greatly lessened and the distance to be traveled by the people of Waterman and those living along the route as originally located would not be appreciably increased. It was also shown that the construction of the road as finally located would cost a great deal less than as originally located, and that it would be possible to duplicate Route No. 23 and No. 18 from their intersection to the village of Leland, thereby saving to the State approximately $70,000. The re-located route runs straight south from DeKalb to a point on Route No. 18 in LaSalle county, a little over a half a mile south of the DeKalb county line. This route passes one mile east of the first located route running through Waterman and it strikes Route No. 18 two and one-half miles east of Leland, and Route No. 18 runs in a north-easterly direction from and through Leland to the point of intersection of Route No. 18 and Route No. 23 aforesaid. Leland is in no way inconvenienced, so far as appears from the record, by the re-location of Route No. 23 south of DeKalb, as it is connected with DeKalb by Route No. 18 and the new re-located line of Route No. 23, and by a line that is one-half a mile shorter than the first located line of Route No. 23 running from Leland to Waterman and from Waterman to DeKalb. The re-located line of Route No. 23 from DeKalb straight south to Route No. 18 is at least two

and one-half miles shorter than the located route from Leland to Waterman and from Waterman to DeKalb. The testimony also shows that the cost of building bridges on the original Route No. 23 as first located would be greater than on the re-located route, and that the new located route would save more than $18,000 per year in the cost of operation by the public by reason of the fact that the re-located route is straighter and with fewer turns and a half a mile shorter. In the re-located route from DeKalb straight south to Route No. 18 there are only two turns in the road, the first one being an east turn for a quarter of a mile, which turn is about twelve miles south of DeKalb. The road then runs straight south for three miles and then makes a west turn again back to the straight line, and then continues straight south throughout to Route No. 18 without further turn. The route through Waterman and to Leland direct has in it three different turns to the west and one east turn, making four turns east and west and as many more south turns in the road as first located. Ottawa and Streator are almost directly south of DeKalb and are in LaSalle county. A straight line from DeKalb to Streator would pass Leland about a mile and a half or two miles to the east of it. A straight line from Ottawa to DeKalb would pass east of Leland a mile or more. As the road is now located the line of travel from DeKalb is straight south from DeKalb to Route No. 18, thence southwesterly on Route No. 18 to Leland, thence in a straight line almost directly south to Ottawa and thence to Streator.

The bill in this case was filed by leave of court on July 13, 1925, and at that time the road had been partially constructed and the contract for the construction for all of it except six miles in the township of Clinton, in which is located the village of Waterman, had been let. The right of way through Clinton township had not been completely obtained. The concrete had been laid three miles north from the south boundary line of DeKalb county and the grading

had been completed three miles further north, to the southern boundary of Clinton township. The grading had been completed from the north boundary line of Clinton township to DeKalb and about three miles of pavement had been laid on that part of the route. In order to change the route now, after more than three miles of concrete and grading had been done and bridges and culverts built on each end of the route between DeKalb and the south line of DeKalb county, it would be necessary to build two miles additional concrete in order to follow the original location of the route through Clinton township, and all of the work that had been done at the south line of the county would be a loss to the State. The State engineers had examined the State aid road improved with a concrete pavement ten feet wide and which was on the route located through Waterman. They testified that this pavement was not of sufficient character and quality to be economically used by the State, and that it would be necessary to re-construct this ten-foot strip of the road within a few years if used, and that the three miles of this ten-foot strip of concrete pavement that had already been used on the route as finally located would have to be replaced within four or five years and that part of it would not be used at all. They further testified that the fact that there was a pavement ten feet wide on the route as first located by them did not influence their selection of that route. The evidence also clearly shows that the route as finally selected crosses fewer lines of railroads than would have been done by adhering to the original route, and that the crossings of railroads that are made by the route as finally selected are much less dangerous because of the facts that the crossings are much more open and the lines of the railroads at the crossing much more easily seen and collisions with operated trains more easily avoided.

Appellants contend that their bill ought to have been sustained because the Department of Public Works and

Buildings having once located the route were powerless to change it; that the change was a major one, not permitted by the statute; that the Department of Public Works and Buildings was required to utilize all of the pavement on the State aid road in DeKalb county, and that Sandwich and Somonauk were not intervening communities, and that the Department of Public Works and Buildings had no power to change the route for the benefit of those two communities. Complaint is also made that the people of Waterman and Leland and their communities were not notified and permitted to participate in the second hearing, and for that reason were not fairly treated on the second hearing.

There was no occasion or necessity for giving notice to the people of Waterman and Leland and vicinities of the second hearing. The State, through its proper department, had given them a complete hearing in the first instance, and had gone over, and even surveyed, the route, and the State was fully advised as to the merits of that route. The only thing necessary or beneficial on the second hearing was for the State to be put in possession of all the facts as to the merits of the route as finally located. The question of a change was to be decided not as a matter of favor to the people on either route, and while it is unfortunate that the people of Waterman are, as they say, greatly disappointed and more or less damaged by the loss of the route, yet the question finally to be determined is as to which route is the best route for the people of the State generally and whether or not the change of location was one that the Department of Public Works and Buildings had the power and jurisdiction to make. There can be no sort of question that the route as finally selected is one that the State, through its representative, could have made in the first instance, and we do not think there is any question that the route as finally selected is the better and more economical and safer route than the original route first selected. Appellants practically admit in their brief that the department might have selected

the route as finally located in the first instance if they had so desired. Section 1 and 2 of the act of 1917 provided a system of durable, hard-surfaced road to be constructed by the State upon public highways of the State along the routes therein described, "as near as may be," and the Department of Public Works and Buildings are given the power to make all final decisions affecting the work and all rules and regulations deemed necessary for the proper management and conduct of said work and the carrying out of the provisions of the act for the best interests and advantage of the people of the State. Section 9 provides that the general location of the routes of the proposed roads shall be constructed "substantially as described in this section, so as to connect, with each other, the different communities and the principal cities of the State," and the department is given power to make such minor changes in the locations of the routes as become necessary in order to carry out the provisions of the act. In the cases of *Mitchell* v. *Lowden,* 288 Ill. 327, and *People* v. *Department of Public Works,* 320 id. 117, this court recognized that there are many highways intervening between the termini of many of the routes named in the act, and that the act does not describe or designate any particular public road or highway upon which the route should be located. We also said that the selection of the public highways to be affected is not left to the arbitrary discretion of the department, and also that while the termini are the only points fixed by the statute, the roads are to be constructed between the termini substantially upon the routes described, so as to connect with each other the different communities and principal cities of the State and so as to afford the different communities and principal cities of the State and so as to afford the different places named and the intervening communities reasonable connection with the termini and with each other. The change of route in this instance accomplishes every object of the statute, and the people of the State have been

served to the very best advantage, according to the evidence in this record, by the re-location of this route, and no one is disappointed or damaged except the people along the first route selected and other people similarly situated who did not succeed in having the route located through their community.    We think that the Department of Public Works and Buildings has exercised a sound discretion and judgment in its final selection of this route and because it distinctly appears that the route as finally located will accommodate more people; that the communities it connects are "intervening communities," within the meaning of the act; that the final location will cost the State much less money than the first route selected; that it will cost the traveling public less in expense of operation while traveling over the road, and that the route is a safer one to travelers thereon.    We think, considering all the facts aforesaid, the re-location is such a one as the Department of Public Works and Buildings had power and jurisdiction to make.

We also think that the record shows that appellants have been guilty of *laches* in filing their bill, and that this is an additional reason or ground for estopping them to contend that the original selected route should be adhered to, even if the facts should show that the original route is as tenable and as economical and as safe as the route finally selected.

The evidence in this case fails to establish any sort of basis for the claim that the Department of Public Works and Buildings was guilty of fraud, conspiracy, willful abuse of power or intentional favoritism in its final selection of the route.    There was no compulsion on the part of the Department of Public Works and Buildings to select and build the hard road on the original route because of the fact that there were about eight miles of concrete road on the route originally selected, only three miles of which were used in the route finally selected, and because of the fact that it was not an economical proposition to use the remainder of such hard road.    Section 10, referred to by appellants, simply

provides that such hard roads shall be used "if such paved road is of proper durable hard-surfaced type to make it practicable to do so." The evidence in this case simply shows that the hard road in question was so inferior as to make it impracticable to employ or use the hard road in the construction of Route No. 23.

The court properly dismissed the bill in this case for want of equity, and the decree of the court is therefore affirmed.

                                        *Decree affirmed.*